# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| SCOTT ALLEN BENNETT,<br><br>Plaintiff,<br>vs.<br><br>COREY TURNER, STEVE TJADEN, and UNKNOWN DEFENDANTS,<br><br>Defendants. | No. C15-4244-MWB<br>No. C15-4197-MWB<br><br>**INITIAL REVIEW ORDER** |

_____

## TABLE OF CONTENTS

*I.   THE IN FORMA PAUPERIS APPLICATIONS ................................................... 2*

*II.  INITIAL REVIEW ........................................................................................... 4*
    *A.   The Applicable Standard ...................................................................... 4*
    *B.   Analysis ................................................................................................ 5*
        *1.   Unknown defendants ................................................................. 5*
        *2.   Roommate .................................................................................. 6*
        *3.   Phone List ................................................................................. 7*
        *4.   Grievance Procedure ............................................................... 13*
        *5.   Federal Rule of Civil Procedure 11 ........................................ 14*

*V.  CONCLUSION ............................................................................................. 15*

This matter is before me on the plaintiff's application to proceed *in forma pauperis* in case C15-4244-MWB (C15-4244-MWB docket no. 1), plaintiff's amended motion to

proceed *in forma pauperis* in case C15-4244-MWB (C15-4244-MWB docket no. 2), and plaintiff's motion to proceed *in forma pauperis* in case C15-4197-MWB (C15-4197-MWB docket no. 2). The plaintiff, Scott Bennett, filed these applications, along with three *pro se* 42 U.S.C. § 1983 complaints, between October 27, 2015, and December 3, 2015. I will consider all of Bennett's various filings below. The plaintiff is a civil detainee at the Civil Commitment Unit for Sexual Offenders (CCUSO) located in Cherokee, Iowa.[1]

## I. THE *IN FORMA PAUPERIS* APPLICATIONS

The filing fee for a 42 U.S.C. § 1983 petition is $350. 28 U.S.C. § 1914(a). The doctrine of *in forma pauperis* allows a plaintiff to proceed without incurring filing fees or other court costs. 28 U.S.C. § 1915(a)(1). Accordingly, plaintiffs who apply for and receive *in forma pauperis* status may file their case for free. However, under the Prison Litigation Reform Act (PLRA), prisoners must meet certain requirements in order to have their filing fee waived. 28 U.S.C. 1915(a)-(b). A prisoner is defined as "any person incarcerated or detained in any facility" for "violations of criminal law . . . ." 28 U.S.C. § 1915(h). Under the statute, prisoners are required to pay filing fees over time and are not entitled to proceed *in forma pauperis* as to filing fees. *Id*. However, CCUSO is not a prison facility; it "provides a secure, long-term, and highly-structured setting to treat sexually violent predators who have served their prison terms, but who, in a separate civil trial, have been found likely to commit further violent sexual offenses." Moreover, the Iowa Code specifies that the types of persons confined at CCUSO are not prisoners. They are civilly committed patients who suffer from a "mental abnormality." IOWA CODE § 229A (generally); IOWA CODE § 229A.2(11). Numerous courts have considered

---

[1] Bennett recently filed another case before me, C15-4082-MWB. I dismissed that case for failure to comply with the Federal Rules of Civil Procedure and for failure to state a discernable claim. (C15-4082-MWB, docket no. 2).

the question of whether those patients committed to a state hospital are prisoners under 28 U.S.C. § 1915. The Eighth Circuit Court of Appeals has held that civilly committed individuals are not prisoners and are not subject to 28 U.S.C. § 1915(a)-(b). *Kolocotronis v. Morgan*, 247 F.3d 726, 728 (8th Cir. 2001). Other courts have reached the same conclusion. In *Michau v. Charleston County, S.C.*, 434 F.3d 725 (4th Cir. 2006), *cert. denied Michau v. Charleston County, S.C.*, 126 S. Ct. 2936 (2006), the Fourth Circuit Court of Appeals stated,

> However, [plaintiff] is presently being detained under the SVPA, which creates a system of civil, not criminal, detention. … *see also Kansas v. Hendricks*, 521 U.S. 346, 365-69 (1997) (concluding that Kansas's Sexually Violent Predators Act established civil rather than criminal detention scheme). Because [plaintiff's] detention under the SVPA is not the result of a violation of criminal law, or of the terms of parole, probation, or a pretrial diversionary program, he does not meet the PLRA's definition of [a prisoner]. *See … Page v. Torrey*, 201 F.3d 1136, 1139-40 (9th Cir. 2000) (concluding that a person detained under state's civil sexually violent predator act is not a prisoner within meaning of PLRA). Accordingly, the PLRA provides no basis for the dismissal of [plaintiff's] complaints.

*Michau*, 434 F.3d at 727-28 (some internal citations omitted.); *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) ("We agree with *Page*, *Kolocotronis*, and the other opinions that have held the PLRA's straightforward definition of "prisoner" to apply only to persons incarcerated as punishment for a criminal conviction."); *Merryfield v. Jordan*, 584 F.3d 923, 927 (10th Cir. 2009) ("Accordingly, we hold that the fee payment provisions of § 1915 applicable to a 'prisoner,' as defined by § 1915(h), do not apply to those civilly committed under the KSVPA."). Based on those cases, it seems clear that the prisoner pay schedule contained in the PLRA is not applicable to the plaintiff's case.

Thus, if a civilly committed plaintiff is entitled to *in forma pauperis* status, that plaintiff may proceed without the payment of fees.

In order to qualify for *in forma pauperis* status, a plaintiff must provide an affidavit with the following statements: (1) statement of the nature of the action, (2) statement that plaintiff is entitled to redress, (3) statement of the assets plaintiff possesses, and (4) statement that plaintiff is unable to pay filing fees and court costs or give security therefor. 28 U.S.C. § 1915(a)(1). In this case, Bennett has filed a motion to proceed *in forma pauperis* that substantially complies with the requirements set out above. Accordingly, the Clerk of Court shall file the plaintiff's complaints. No filing fee will be assessed.

However, once any portion of a filing fee is waived, I must dismiss the case if the allegations of poverty prove untrue or the action in question turns out to be frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

## II.   INITIAL REVIEW
### *A.   The Applicable Standard*

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Pro se* complaints, no matter

4

how "inartfully pleaded are held to less stringent standards than formal pleadings as drafted by a lawyer." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal citations omitted).

Although it is a long-standing maxim that a complaint's factual allegations are to be accepted as true at the early stages of a proceeding, this does not require that a court must entertain any complaint no matter how implausible. The facts pled "must [still] be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the claim to relief must be "plausible on its face." *Id*. at 570. A claim is only plausible if a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Where the complaint does "not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 1950 (citing FED. R. CIV. P. 8(a)(2)). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 1949.

Thus, to survive initial review, the plaintiff must allege a plausible, non-frivolous claim that a state actor has violated his constitutional rights.

### B. Analysis

#### 1. Unknown defendants

At the outset, I note that several of Bennett's complaints are against unknown or "John Doe" defendants. Although unusual, a civil rights action may be initiated against unidentified defendants when their true names are not yet known but may be learned. *See Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 390 n. 2 (1971) (noting that the district court ordered the complaint served upon the agents that arrested the plaintiff according to the records of the United States Attorney); *see also Munz v.*

5

*Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) (stating that "[d]ismissal is proper only when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention.); *Foulk v. Charrier*, 262 F.3d 687, 696 (8th Cir. 2001) (implicitly endorsing the use of 'John Doe' defendants in 42 U.S.C. § 1983 prisoner complaints in the Eighth Circuit when discussing whether 'John Doe' complaints will relate back for statute of limitation purposes.). This practice has been adopted in other circuits as well. "Although the use of a 'John Doe' is disfavored, it serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants." *Green v. Doe*, 260 Fed. Appx. 717, *3 (5th Cir. 2007) (citing *Colle v. Brazos County*, 981 F.2d 237, 243 n. 20 (5th Cir. 1993)).

In this case, it is likely that the unknown defendants, who are CCUSO staff members, would be easily discernable upon initial discovery. Accordingly, Bennett's case will be allowed to proceed against the unknown defendants. However, as will be discussed more fully below, Bennett has yet to put forward a claim that can survive summary dismissal. Accordingly, the issue of where to serve the unknown defendants is not ripe.

### 2. *Roommate*

Bennett's first complaint in C15-4244-MWB alleges, in its entirety, "I am forced to live on the same unit as my victim." Bennett does not identify the defendant related to this issue or who the alleged "victim" is. More importantly, Bennett in no way connects that claim to any possible constitutional violation. The fact that Bennett may have history with someone who lives in the same CCUSO unit as he does is unfortunate. But, as stated above, to make a valid 42 U.S.C. § 1983 claim, Bennett must allege a violation of a constitutional right. Bennett has failed to do so. Even giving great deference to *pro se* filings, I can find no possible constitutional violation. Accordingly, this claim must be dismissed.

6

### *3. Phone List*

In C15-4197-MWB, Bennett alleges that, "the defendants in this case took all the churches off my phone list and told me I can't call any churches." Again, to make a valid 42 U.S.C. § 1983 claim, Bennett must base his argument on an alleged constitutional violation. Although Bennett has not explicitly grounded his claim on a constitutional right, it seems that Bennett's argument may touch upon two First Amendment rights. As set out above, I must consider a *pro se* litigant's filing, no matter how inartfully pled.

Telephone use by detained or incarcerated individuals is an often litigated issue. The Eighth Circuit Court of Appeals recently discussed the First Amendment right to access a telephone in the context of Minnesota's civil commitment program. In that case the Eighth Circuit Court of Appeals stated:

> "Any form of involuntary confinement, whether incarceration or involuntary commitment, may necessitate restrictions on the right to free speech." *Martyr v. Bachik*, 755 F. Supp. 325, 328 (D. Or. 1991) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)). In the prison context, we have concluded that "the extent of inmates' First Amendment right to communicate with the outside world is a fact-intensive universe." *Holloway v. Magness*, 666 F.3d 1076, 1079 (8th Cir. 2012). "A prisoner has no right to unlimited phone use." *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989). This means that "[a]lthough prisoners have a constitutional right of meaningful access to the courts, prisoners do not have a right to any particular means of access, including unlimited telephone use." *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992). "[I]f the government chooses to create a public forum for speech, whether a general or a limited public forum, it may not unreasonably restrict the public's use of that forum." *Holloway*, 666 F.3d at 1079. However, this

> "principle does not include a mandate to create any particular type of public forum, such as providing inmates with telephone service." *Id*. "Because the Constitution 'permits greater restriction of [First Amendment] rights in a prison than it would allow elsewhere,' restrictive prison regulations are normally reviewed under the four-factor *Turner* test to determine whether they are 'reasonably related to legitimate penological interests.'" *Id*. at 1080 (citing *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed.2d 64 (1987)). Here, both parties agree that the *Turner* test applies.

*Beaulieu v. Ludeman*, 690 F.3d 1017, 1038-39 (8th Cir. 2012). The court went on to apply the *Turner* test and found that Minnesota's restrictions on phone use, specifically that detainees could only make limited duration outgoing calls and calls could be monitored, were appropriate. *Id*., at 1039-40. In the *Benzel* case, cited above, the Eighth Circuit Court of Appeals also considered whether detained individuals have a Fourteenth Amendment due process right to make telephone calls. The court found, as follows:

> Although in some instances prison inmates may have a right to use the telephone for communication with relatives and friends, prison officials may restrict that right in a reasonable manner, "subject to rational limitations in the face of legitimate security interest of the penal institution." *Hutchings v. Corum*, 501 F. Supp. 1276, 1296 (W.D.Mo. 1980). A prisoner has no right to unlimited telephone use. *See Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982).

*Benzel*, 869 F.2d at 1108. In that case, the Eighth Circuit Court of Appeals found that even rigid restrictions on telephone access could be acceptable, so long as they did not completely eliminate an inmate's ability to communicate with the outside world. *Id*., at 1109. It is worth noting, however, that the policies at issue in the *Benzel* case explicitly allowed detained individuals to make religious calls.

Based on case law of the Eighth Circuit Court of Appeals, it is clear that claims related to telephone use fall under the four factor *Turner* test, which asks: (1) whether

8

there is a valid, rational connection between the regulation and legitimate governmental interests put forward to justify it; (2) whether alternative means of exercising their rights remain open to the prisoners; (3) whether accommodation of the asserted rights will trigger a "ripple effect" on fellow inmates and prison officials; and (4) whether a ready alternative to the regulation would fully accommodate the prisoners' rights at de minimis cost to the valid penological interest.[2]  *Benzel*, 869 F.2d at 1108.

In the present case, Bennett has not pled enough facts to assert a valid First Amendment free speech claim or for me to consider his claim under the four-factor *Turner* analysis. As stated above, the facts pled "must [still] be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp.*, 550 U.S. at 555. To raise a right to relief, a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Bennett's one sentence complaint does not contain enough information to state a constitutional violation. Instead, important details about the alleged denial of telephone access are missing. It is unknown if Bennett is allowed to make other calls (presumably so) or if this is a standard telephone restriction at CCUSO. It is also unclear if Bennett is given alternate means to communicate. Importantly, both the *Beaulieu* and *Benzel* cases state that prisons and hospitals have great latitude to restrict telephone access; and *Benzel* endorses even very rigid restrictions, so long as the detained individuals can still communicate with the outside world. In this case, Bennett's complaint, at most, allows me to infer misconduct. A mere inference of misconduct is

---

[2] I also note that telephone use at CCUSO is subject to a class-wide settlement agreement between CCUSO patients and the CCUSO administration. However, that agreement relates only to privacy, and specifically states that CCUSO patients should be allowed to make private phone calls from a private area. C05-4065-DEO, docket nos. 141 and 151.

9

not sufficient to survive summary dismissal. *See Iqbal*, 129 S. Ct. at 1950 (citing FED. R. CIV. P. 8(a)(2)). Accordingly, Bennett has failed to state a First Amendment free speech claim.

Bennett's telephone use claim also implicates his right to free expression of religion. Judge O'Brien has previously ruled on various free expression issues at CCUSO. In *Altman v. Palmer*, No. 13-CV-4066-DEO, 2015 WL 1383824, at *6 (N.D. Iowa 2015), decided earlier this year, Judge O'Brien set out the appropriate standard:

> In *Youngberg v. Romeo*, 457 U.S. 307 (1982), the Supreme Court of the United States held that the Fourteenth Amendment of the United States Constitution determines the rights of individuals who have been involuntary committed to a facility. *Id*. at 312. Although residents at state institutions do have constitutionally protected interests, these rights must be balanced against the reasons put forth by the State for restricting their liberties. *Id*., at 321. Inmates clearly retain their First Amendment right to free exercise of religion in prison, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). It is obvious then that civil detainees also retain their First Amendment Rights.
>
> In *Turner v. Safley*, 482 U.S. 78 (1987), the Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Id*., at 89. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id*.
>
> In *Beaulieu v. Ludeman*, 690 F.3d 1017, 1039 (8th Cir. 2012), the 8th Circuit applied the *Turner* framework to civilly committed patients' free speech claims. However, in that case the parties agreed to the *Turner* framework, so the 8th Circuit did not precisely consider whether the *Turner* framework must be applied to civil detainees. Regardless,

many Courts have applied *Turner* in analyzing constitutional claims by civilly committed sexually violent predators. *See Thompson v. Vilsack*, 328 F. Supp.2d 974 (S.D. Iowa 2004)(Judge Pratt applied *Turner* to a claim that co-payment for Kosher meals violated civilly committed sexual predator's First Amendment rights); *see also Rivera v. Rogers*, 2006 WL 1455789 (D. N.J.2006)(applying *Turner* in analyzing claims of SVPs that opening of their packages violated their First Amendment rights); *Willis v. Smith*, 2005 WL 550528 (N.D. Iowa 2005)(Magistrate Zoss) (noting that status of sexually violent predators (SVPs) was substantially similar to that of prisoners and applying *Turner* to SVP claims concerning mail handling procedures); *Gilmore v. Kansas*, 2004 WL 2203458 (D.Kan. 2004) (noting *Turner* standard in regard to claims of denial of razors, lighters, electricity, use of a washer and dryer, and freedom to move about the facility); *see also Hydrick v. Hunter*, 449 F.3d 978 (9th Cir. 2006)(stating that "[a]s is the case with prisoners, civilly committed persons certainly retain those First Amendment rights not inherently inconsistent with the circumstances of their detention."). Recently, Judge Frank in the District Court of Minnesota introduced a slightly modified *Turner* test in the context of civil detainees' free exercise claims. Specifically, Judge Frank considered "each of [the] Plaintiffs' First Amendment claims in light of appropriate therapeutic interests as well as relevant safety and security concerns." *Karsjens v. Jesson*, 6 F. Supp.3d 916 at 937 (D.Minn. 2014). Accordingly, this Court will analyze the Plaintiff's free exercise complaint under the *Turner* framework as modified by Judge Frank.

Before the Court reaches *Turner*, though, the Court must consider the threshold question of whether a free exercise claim exists. In a typical prisoner free exercise case, the Plaintiff must allege a substantial burden on his free exercise of religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). Substantially burdening one's free exercise of religion means that the regulation must

11

significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion. *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004)(quotation and alterations omitted).

In the *Altman* case, the plaintiff, who had earned the right to travel away from the CCUSO campus, complained that CCUSO defendants had improperly denied him the right to attend a particular church in a different town. Judge O'Brien applied the *Turner* test and found that CCUSO was within its authority to choose what towns the plaintiff could visit. *Altman*, 2015 WL 1383824, at *7. In a similar case, a CCUSO plaintiff complained that CCUSO did not provide services for his particular denomination. However, the facts showed that local pastors from that denomination did not want to minister to CCUSO patients, and Judge O'Brien ruled that, "[t]he Defendants do not have the power to compel a minister to come to CCUSO. . . [The] Defendants are doing all that they can. As long as they continue to do so, Mr. Mead does not have a free exercise claim under the Turner framework discussed above. Accordingly, the Court must grant the Defendants' Motion for Summary Judgment, Docket No. 31." *Mead v. Palmer*, No. 13-CV-4017-DEO, 2014 WL 2557673, at *6 (N.D. Iowa 2014).

In analyzing a free expression claim, the threshold question is whether the defendants have substantially burdened the plaintiff's free exercise of religion. A substantial burden is a regulation that significantly inhibits or constrains conduct or expressions that manifest some central tenet of a person's individual religious beliefs; or must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are

fundamental to a person's religion. *Murphy*, 372 F.3d at 988. Denying Bennett telephone contact with his church could possibly be a substantial burden.

However, as stated above, a mere inference that misconduct could have occurred is not sufficient to state a claim that can survive summary dismissal. In this case, Bennett has failed to state what religious practice is substantially burdened by the phone restrictions implemented by the defendants. If the complaint made a reference to Bennett's specific religious expression, it is possible that it may be able to state a valid claim. But, the complaint makes no reference to Bennett's religious conviction, beliefs, or faith. The complaint is, again, equally unclear on the question of whether the CCUSO defendants have prohibited Bennett from having contact with all clergy or just restricted his phone access. It goes without saying that, if Bennett meets with his pastor on a regular basis, a phone restriction would have no impact on his free expression. With no information regarding the extent of the burden, other than that telephone calls are prohibited, and no information regarding the religious expression being burdened, I cannot find that Bennett has stated a plausible free expression claim. However, because it is possible that Bennett may be able to state a valid free exercise claim, I will give him thirty days to file an amended complaint regarding the impact of the phone loss on his free exercise of religion. If Bennett does not amend within thirty days, his claim will be dismissed.

### 4. *Grievance Procedure*

Bennett's final complaint, as set out in C15-4244-MWB, docket no. 2-1, is that defendants Turner and Tjaden have denied various "kites" Bennett has sent.[3] Bennett

---

[3] A "kite" is a means of internal communication often used by prisons and state hospitals. Kites are essentially notes that patients and prisoners write to prison officials. In a kite, an inmate or patient may make any type of request or complaint and the

has not stated what his "kites" were about, or why they were denied. As stated above, to state a valid 42 U.S.C. § 1983 claim, Bennett must allege a violation of a constitutional right. Bennett has failed to do so. Even giving great deference to pro se filings, I can find no possible constitutional violation. Accordingly, Bennett's final complaint must be denied.

### 5. *Federal Rule of Civil Procedure 11*

Finally, I would like to call Bennett's attention to Federal Rule of Civil Procedure 11(b), which states that:

> [b]y presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). If a court determines that Rule 11(b) has been violated, that court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Fed. R. Civ. P. 11(c)1. This rule applies to *pro*

---

appropriate officials are compelled to respond. Sending a kite is often the first stage of a state institution's grievance system.

*se* litigants. "[O]ne acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988). *See also Urban v. Sells*, No. C14-4025-MWB, 2014 WL 3809977 (N.D. Iowa 2014), where I discussed the procedure for imposing monetary sanctions on pro se litigants who continually file frivolous law suits.

I further note that Bennett has filed *four pro* se complaints in the last two months. All but one of those complaints have now been dismissed for failing to state a claim. The three dismissed complaints are so clearly implausible that they borderline on frivolous. As set out above, the facts underlying the final complaint, regarding phone access, could give rise to a valid cause of action and I am giving Bennett thirty days to amend his complaint. Because three of Bennett's four complaints were far below acceptable pleading standards, I caution Bennett from filing further lawsuits unless his claims are firmly grounded in an alleged constitutional violation. If Bennett, after this warning, files further frivolous suits, I will consider various monetary sanctions, including requiring Bennett to pay the full filing fee for all suits that have been summarily dismissed.

## V.     CONCLUSION

For the reasons discussed above, Bennett's motions to proceed *in forma pauperis* (C15-4244-MWB, docket nos. 1, 2 and C15-4197-MWB, docket no. 2) are **granted** and the Clerk of Court shall file Bennett's complaints without the payment of any filing fees. However, upon initial review, it is clear that Bennett has failed to state a claim upon which relief can be granted in case C15-4244-MWB (C15-4244-MWB, docket no. 1-2 and docket no. 2-2). Accordingly, that case will be **dismissed** in its entirety. However, in case C15-4197-MWB, Bennett has thirty days from the date of this order to file an

amendment to his complaint. If Bennett fails to amend, that complaint will also be dismissed. The Clerk of Court shall send a copy of this order to assistant Iowa attorney general Gretchen Kraemer.

**IT IS SO ORDERED**.

**DATED** this 16th day of December, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA